The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's case will be called as previously announced. The times will be as allotted to counsel. The case today is Jose Pais v. Kilolo Kijakazi, appeal number 21-1948. Attorney Sponso, please unmute your audio and video at this time and proceed with your argument. Thank you and may it please the court. I would like to reserve three minutes for rebuttal at the end of this time. You may. Thank you, Your Honor. Your Honors, we're here today in an unusual manner on an unusual case based on some very unusual facts. Generally, what comes up at this point, we have simply, there's simply two issues here in this 406B fee case under the Social Security Act. Whether our motions for attorney's fees under 406B are timely and reasonable. Timeliness, I'll start with timeliness first. Starting with does not contain a time limit written into it. While I need to make the argument that therefore any motion would be timely, it is very common for this and also other circuits to read timeliness requirements into a statute, which leaves generally two different approaches that other than to involve generally a 15-day rule read based on Federal Rule of Civil Procedure 54 and a reasonableness rule under under Rule 60. Generally, my argument is, Your Honors, that our motion, regardless of which rule would be applied, is still nonetheless timely. How is two years timely in any way? Yes, Your Honor, and that's really the core of the question. The question then becomes to what extent is 26 months timely if we're counting from the notice of award. Generally, Your Honors, the unique factors of this case include not just the delay on our part as laid out well in appellant's brief and appellant's reply, but also the manners of actions on behalf of Social Security, on behalf of the administration. In that time, the District Court found that your reasons for not timely filing were insufficient, so I assume those findings would be reviewed for clear error. Your Honor, I would argue that the error below was denied on a couple of reasons. One was the court below applied a one-year outside limit under Rule 60. That rule, we're arguing, is clear error. The way that it would be applied through Rule 60 would not be applied, but even then, we're arguing that the court below failed to consider at all the role of SSA's making it appear that the late filing would be reasonable. The District Court made it very clear that reasonableness should be viewed from the claimant's perspective. The court was explicit on that. If that's the appropriate framework for assessing reasonableness, how could a claimant whose retroactive benefit is being delayed for all this time? It doesn't matter who's at fault, whether it's your fault or whether the Social Security Administration's at fault. Just in terms of the delay in getting money to the claimant, their money, how could that be viewed as reasonable? Your Honor, the issue is not whether the claimant's back pay is being delayed. Seventy-five percent of his back pay has been released to him, as was his expectation under our fee agreements. The 25 percent that remained, that amount was something that he had no expectation to receive. He had signed away his right to that as our contingent fee on the basis of that. When viewed from a claimant's point of view, the only expectation that he might have would be in the return of the EJA fees, which if we are to receive 406B fees under our fee agreement and under the law, we're required to return EJA fees to the claimant, which we would. Viewed from that point of view, the claimant received the 75 percent of his past due benefits that he was entitled to. The remainder, this 25 percent, was always our fee. Now, going back to the claimant, these letters that went out indicating that if no claim was made for attorney's fees, the unclaimed funds would go to the claimant. To your knowledge, does the claimant receive copies of those letters so that he would have an expectation as time goes by and no claim is made that he's going to get that money? Does he get copies of those letters, to your knowledge? I don't know off the top of my head, and while looking at the video today, I can't necessarily look over and consult the letters themselves. It may say on him that it was copied to him, but even then, if it was copied to him, the claimant's expectations would be of those notices. If this was a single notice that was missed, that would be a different story. Our argument as to timeliness is that reasonable period reset each time that Social Security failed to release the back payment. Rather, I should say the amount reserved for attorney's fees. Would you necessarily get the full 25 percent, or would there still be a decision by the District Court for reasonableness? The reasonableness of the request can be decided by this Court, Your Honor. Ordinarily, because you said that based upon a contingency arrangement, you get 25 percent, but what I'm asking is, do you necessarily get the 25, or is your bill still deemed reasonable, the claimant would still get the balance of that? Yes, so the 25 percent applies both at the administrative level and at the court level. In theory, there's a relatively recent Supreme Court case that says we could charge 25 percent, a whole 25 percent of back pay at the administrative level and again at the federal level. We don't do that. I don't believe the claimant's expectation is like that, and we haven't altered our fee agreement that way, but the reasonableness of the fee would be determined, yes, it would either, the 25 percent is determined in part by the ALJ as to the time before the administration, and the reasonableness as to the time in front of the court would be normally done by the Federal Judge. Suppose the judge said, I award you this fee, and this fee really amounts to 20 percent of the amount held, would the claimant get the 5 percent balance returned to him or her? Yes, yes he would, subject to any appeals. Okay, that's time. Okay, so that goes to Judge Lopez's questions about the expectations of the claimant. There could be an expectation that even though you may in theory get 25 percent, you may not. A claimant could expect my fee to be reduced. A claimant, for example, could object to a fee. So the court could just not feel that you're entitled to 25 percent. True, the court could do that too. Again, all of these things are not necessarily, though, contemplated by the fee agreement. Therefore, even though it is possible, the claimant has agreed the 25 percent is something that is, at least from his point of view, at least from a claimant's point of view, this is the fee that I owe. Whether that fee is kept in the forefront of their mind seems unlikely to me. Okay, any other questions, colleagues? All right, thank you, Counselor. Thank you, Your Honor. Thank you, Mr. Sponzo. At this time, please mute your audio and your video. Attorney Boland, at this time, please unmute your device and introduce yourself on the record to begin. May it please the Court, my name is Timothy Boland, and I represent the Acting Commissioner of Social Security. Like many attorney fee statutes, Section 406B does not contain a time limit within which an attorney may seek fees out of his client's past due Social Security benefits. So, courts have looked to the rules of civil procedure to effectively administer the statute. The District Court engaged in a thorough and comprehensive analysis of this question before reaching the broadest possible conclusion, holding that Plaintiff's Counsel had a reasonable time to seek fees under Section 406B once the notice of award issued, and that makes sense. So, is reasonable time the time that you want us to adopt? As our role as a quasi-trustee, Your Honor, we don't take a specific position on which test this Court should adopt, either the Rule 54 test or the Rule 60B test. Under either test, however, the Court should affirm the District Court's finding that, in this instance, the petition was untimely, given that the Court used the broadest possible latitude, and it should reason. Why can't you express an opinion, based upon your experience, that it might be useful for the Social Security Administration and practitioners to have a uniform rule within the circuit? It seems odd, to me at least, to have different districts having different rules. That doesn't make a lot of sense, does it? The reason, Your Honor, we don't take a position in this Court is because, at base, we're not a party in interest to the dispute in this case. At this point in time, with benefits having been awarded, all the agency is doing is reserving the 25% of past-due benefits for potential payment to the attorney or potential reimbursement or potential release back to the claimant. But you're not a party in interest, but you filed an objection to the attorney getting paid. That's consistent with what the Supreme Court says the Commissioner's role in Gisbrec is, which is to serve as a quasi-trustee on behalf of the claimant and to simply bring to the Court's attention issues that may complicate the award of the fee. Under 406B, it is the District Court that has sole discretion to award the fee and the amount of the fee, and the Commissioner plays a advisory role, advising on issues such as timeliness and reasonableness, but does not stake out a particular position, which is precisely why, even now, the issue over whether Rule 54 or Rule 60B should apply is not one the Commissioner can take a position on and one, in this instance, the Commissioner need not take a position on because, again, the District Court employed gave the Council the widest possible latitude to file the petition for fees here, and in so doing, reasonably set as the triggering point the notice of award in this case. That's consistent with those courts of appeals that have considered the issue, regardless of whether they've adopted the Rule 60B approach or the Rule 54 approach. They've unanimously held that the notice of award is that triggering point that includes the 10th Circuit. I'm sorry, does the notice of award give all of the information necessary for the attorney to be able to file the appeal, I mean, the request? I was trying to understand the mechanisms. It seems like some of the courts have had difficulty with the 14-day rule. Yes, it does, Your Honor. The notice of award, and it's undisputed in this case, the notice of award provides all of the information necessary to seek 406B fees, and in fact, it's that precise reasoning that underscores why the 10th Circuit in McGraw, the 3rd Circuit in Walker, and the 2nd Circuit in Sinclair set the beginning of the applicable period at the notice of award. If there are changes in benefits, which sometimes happens, changes to the claimant's past due benefits, adjustments are made, those courts have found that regardless of which rule is used, 54 or 60B, there are flexibilities built in that would allow counsel to seek supplemental fees if there is an increase in past due benefits. In other words, there are reasonable ways to adjust the amount of attorney's fees that go to an attorney if there are adjustments after the notice of award, but as a starting point, the notice of award contains all of the information necessary for counsel to seek fees under 406B. Conversely, the closeout letters in this case are completely immaterial to the time limit for filing a 406B, and that's plain on the face of them for two clear reasons. The first is that those closeout letters say that SSA is withholding past due benefits for potential court-ordered fees, and perhaps even more importantly than that, they expressly say that any fee is still subject to court approval, and that is consistent with 406B setting the court as the arbiter of the reasonableness and necessarily the timeliness of a 406B fee petition. The commissioner ostensibly has no authority to tell the claimant that something is timely when it's not the agency who has the authority to award or order these fees. It is solely the province of the district court to consider the reasonableness of the fee petition. Douglas Goldstein, CFP®, is the director of Profile Investment Services and the host of the Goldstein on Gelt radio show. I apologize. The letters in this case, on pages 15, 17, and 19 of the appendix, are addressed to the attorney, and there's no indication that they're cc'd or copied to the client. What the client unquestionably receives, however, Judge Lopez, is that very first notice of award, which advises what has to happen for his attorney to seek 406B fees, what the process is, and that he would get that back if no 406B fee petition is filed. Or, to your questioning, Judge Thompson, should the court award less than 25% or no benefits at all? Of course, the court has discretion to award from zero to 25% in any given case, consistent with the factors laid out in GISBREC for the court to consider. One thing important, I think, to emphasize here on the nature of those closeout letters is to the timeline very quickly, and this goes directly to a point the plaintiff made on page 12 of the reply brief that the commissioner essentially acquiesced in the delay of the withholding of these funds. The first closeout letter in this case, and it appears at the appendix at page 15, was issued on October 26, 2020. Within 20 days of that letter, in fact, much less than 20 days, plaintiff's counsel wrote to the agency and said, I intend to file a 406B fee petition. Please continue withholding my client's funds until the court acts on that petition. So that's consistent with exactly what the agency did at every step after that November 3, 2020 letter, which appears on appendix page 25. The agency kept withholding those funds. There was no acquiescence to delay here. The agency reminded, certainly counsel, that these funds were continuing to be withheld and invited the possibility of filing a letter, but in no way insinuated, suggested, implied that the letter would be timely, or that he would receive anything under the letter. Why did the administration keep sending these closeout letters? I mean, after the first one was sent and there was no timely request for fees, the funds should have been released to the claimant, right? That's what should have happened. Under the regulations, that is the normal course, Your Honor. That is the proper mechanism. So I don't have a good answer for you. What I can surmise based upon the status of the record is that, again, Mr. Spunzo asked for the fees to continue to be withheld by his November 3, 2020 letter. But regardless of why the funds were withheld, the point that I think that's clear, or the clear takeaway from those letters, is that they speak not to the viability of the court rewarding fees. To the contrary, they specifically disclaim any insinuation of what the court might do with those fees and what they label an important reminder and say that any fees under 406B are still subject to court approval. That, I think, both eliminates the viability of those closeout letters as a starting point for a petition or a resetting of the clock, as plaintiff urges, and it eliminates any type of detrimental reliance claim, like the plaintiff makes in footnote 5 of his brief, because it and reasonable reliance. No reasonable attorney can rely on a letter that has no authority to allow or grant 406B fees, since that lies solely with the court, and that expressly says that those fees are subject to court approval. So for Mr. Boland, from an administrative perspective, and because the circuits are split on this 14 versus reasonable determination, does it matter to the agency as far as processing is concerned? In other words, you're working with both rulings, so is one easier for the agency than the other, administratively? To my knowledge, Your Honor, there are no particular administrative complications with either, in terms of the withholding, the disbursement, or the eventual payment if the court should award fees, because the mechanism would work the same. All that the difference between the courts are doing is really setting the starting point for a payment or reimbursement of those fees. Thank you. But in those jurisdictions where it's just reasonable under the 60 with the one-year limit, so you have up to one year maybe with 14, that doesn't cause any kind of administrative problem? Well, one thing to clarify that's inherent in your question, neither the district court in this case, nor I believe McGraw in the Tenth Circuit, set a hardline one-year limit at reasonableness. No, that's the outer limit. I understand that. But I don't even think they consider one year to be an outer limit. In other words, Judge Sullivan here didn't find one year to be, that's it, past one year, I have no discretion but to deny. She remarked Rule 60B's one-year limit here as kind of a milestone, that this even exceeds the one-year limit that Rule 60B provides, and I think that's the same approach the Tenth Circuit takes in cases like McGraw and later early in 2008. It doesn't hold that to be a line in the sand, but it's a milestone. But to get to the core of your question, I don't think it does because the issue here is, again, the agency is withholding the funds for the ease of counsel to receive those funds. It's essentially an administrative convenience to counsel. If those funds are remitted back to the claimant and the court should at some time later still award 406B fees, counsel is still entitled to those fees, he just doesn't have the convenience of the agency paying them directly out of past due benefits. That's all. Thank you, Your Honor. Thank you. Any other questions? Yes, go ahead. Maybe, well, I'll take advantage of your presence to ask, in seeking those fees from the claimant are there any restrictions, regulatory, in particular, on how the attorney can go about trying to get those fees from the claimant? Are there any constraints on that? I mean, they don't like to have to do it that way, I know, but are there any constraints on how they go about doing it? And just so I understand your question, Judge Lopez, assuming the court has a situation like this, suppose the attorney is not successful, the appellant here is not successful, so that all the funds would be released to the claimant, can the attorney now still go in some form directly to the claimant and say, we still have an agreement, we want you to now pay us pursuant to that agreement? They can do that, I gather, is that correct? It's not, Judge, and the reason being the agreement must be subservient to the statute, and the statute expressly conditions the award of 406B fees on the court finding them allowable. The language of the statute is the court may determine and allow as part of its judgment, so if this court were to affirm the district court's decision, finding it untimely, that essentially ends the issue of 406B in this case. Those funds are properly remitted to the instance. On the other side, he would get to keep the EJ fees. Yes, I understand. That's very helpful. Thank you. Thank you, Your Honors. At this time, Mr. Boland, please mute your audio and your video, and Attorney Sponzo, please unmute your device and reintroduce yourself on the record to begin. You have a three minute rebuttal. Thank you, David Sponzo, Greenberg for the appointment. Just very quickly, a couple of different issues. First, to use a little bit of my time to help the court and hopefully my fellow practitioners down the road, I would argue for the reasonableness rule under Rule 60. It does seem to be more easily administratable. As to the triggering event, yes, the notice of award has everything to request 25%. However, if an attorney such as me would only request a total of 25% combined between the agency fees and the federal court fees, I would argue the notice to charge and collect a fee from the administration could also be a reasonable time, especially if the administrative law judge as here reduces the fee by a certain amount, then that amount could be added on to the amount asked for under the 406B fees so as to attempt to reach the full 25%. Going to the authority issue brought up by the commissioner. Commissioner's attorney states that no reasonable attorney would rely on a letter that doesn't have authority. I would state, as I did in my brief, no reasonable attorney files a 26 emotion for fees or emotion for anything that could be 26 months out of date without some kind of representation from some sort of authority that it could be reasonable and appropriate. I certainly wouldn't have done so here, and I can't imagine anyone else doing it either. And even if continued withholding after the October 26, 2020 letter was appropriate, the fact that there was no reply, our office, for reasons, for admittedly reasons that I can't tell you because it wasn't contained, it's no longer contained in our records, for reasons unknown, we did not reply to the April 25, 2021 letter. 20 days after that, the funds should have been released and they were not, which is why we were, I was just as surprised to discover that on August 11, 2021, the funds were still being withheld despite the April letter, despite the April 2021 letter. Mr. Spunzel, when you are trying to operate your office normally, do your attorneys try to file within 14 days? What's the rule of thumb that you use? Generally, we don't file for fees. We will file for fees under, we will go for the whole 25% under the administrative umbrella. Here, we miscalculate. We simply miscalculated the administrative fees that we charged. We ended up charging 25% of the amount withheld. That's time. Administratively rather than charging the full 25% of the past due benefits. That was a miscalculation on our part. The paralegal did it. I signed off on it and that's entirely on me. Okay. I think I understand what you just said. All right. Any other questions, gentlemen? All right. Thank you, Counselor. Thank you. Thank you, Judge. That concludes argument for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this Honorable Court. Counsel, you may disconnect from the meeting.